UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARISH SURI,<br><br>          Plaintiff,<br><br>     v.<br><br>HONORABLE ANTHONY R. FOXX, ET<br>AL.,<br><br>          Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 13-5036<br>(JEI/JS)<br><br>**OPINION** |

**IRENAS**, Senior District Judge:

This employment discrimination action appears before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).[1]  For the reasons below, the Motion will be DENIED in part and GRANTED in part.

## I. Relevant Facts

Plaintiff Harish Suri ("Suri") alleges in his Second Amended Complaint ("Complaint"), filed April 16, 2014, the facts

---

[1] Defendants also seek to dismiss a portion of Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). However, this portion, which pertains to whether or not the Court should imply a *Bivens* remedy, is not a jurisdictional question.  *See Smith v. United States*, 561 F.3d 1090, 1100 (10th Cir. 2009)("[W]hether a court should imply a Bivens remedy is not a question of subject matter jurisdiction. . . . In fact, there is no power to imply a Bivens cause of action unless a court has first satisfied itself that jurisdiction exists."  There is no dispute that this Court has subject matter jurisdiction over Plaintiff's claims, brought under Title VII and the Fifth Amendment of the United States Constitution.

1

below, which the Court accepts to be true in deciding the instant Motion.

Suri is an American citizen of Indian descent who provided contracting services as an Environmental Engineer to the Federal Aviation Administration ("FAA") for nearly 18 years.  (Second Am. Compl. ¶ 14, 19, 35)  Suri began his affiliation with the FAA when he completed a summer internship in 1995 (Id. ¶ 16), and he continued to provide services through two contracting firms — Hi-Tec Systems ("Hi-Tec") beginning September 1995 (Id. ¶ 18) and EIT, Inc. ("EIT") beginning March 2008 (Id. ¶ 24) — until his FAA contractor position was terminated on or about March 29, 2013.  (Id. ¶ 37)

Suri has a Bachelor's Degree in Electrical Engineering, a Master's Degree in Engineering Science, and a Master's Degree in Environmental Engineering.  (Id. ¶ 15)  He has also completed several training and certification programs while on the job. (Id.)  Following his internship with the FAA, he was hired by Hi-Tec to continue working on site with the FAA as an Environmental Engineer.  (Id. ¶ 19)  Suri was interviewed by Kenneth L. Stroud and Defendant Howard Kimpton of the FAA to fill the FAA funded contract position with Hi-Tec.  (Id. ¶ 18) During the 13 years Suri worked for Hi-Tec, providing contract support to the FAA, he reported directly to Stroud and Defendant Kimpton.  (Id.)  Beginning March 2008, Plaintiff continued his

2

work at the FAA through EIT, a different contractor, until March 29, 2013.

Throughout the 18 years relevant to his Complaint, Plaintiff asserts that "[h]e reported to the FAA building, was given an office cubicle in the building and all of his work tools," including his furniture and equipment, and that "[h]is FAA supervisors approved his vacation and discretionary time off[,] . . . decided his work assignments, and approved or rejected his work and reports." (Second Am. Compl. ¶ 20)  He also asserts that "[a]ll of his assignments were given by the FAA and under its supervision and oversight" and that he "reported to FAA superiors who had the right to hire, discipline and terminate him." (Id.)  In addition, "[t]he FAA had exclusive control over his work assignments," providing him instruction and training, and "FAA supervisors assigned key and non-key positions at their exclusive discretion." (Id.)

Plaintiff asserts that he repeatedly asked his supervisor Defendant Kimpton for a permanent position with the FAA, but Defendant Kimpton discouraged him, telling him the government was in a hiring freeze or that it would be a big pay cut for Plaintiff.[2]  (Second Am. Compl. ¶¶ 17, 25, 26)  Nonetheless,

---

[2] Plaintiff formally applied to at least one position that was advertised but notes that the positions he sought were generally filled using direct hiring authority and without advertising to the public. (Id. ¶ 26)

3

Plaintiff alleges that at least ten other Caucasian employees were hired into permanent positions.  (Id. ¶¶ 21-22, 25-26) Though Plaintiff does not specify the qualifications of each of these employees in comparison to his own, he notes that at least three had completed only Bachelor's degrees, and that he had trained at least one of them himself, when she was a summer intern.  (Id. ¶¶ 21, 25)  The FAA never hired Plaintiff as a permanent employee and ultimately reassigned his duties to a non-key position for which funding was terminated.

Plaintiff alleges that he suffered discriminatory treatment as early as his summer internship with the FAA in 1995, when his director supervisor, FAA employee Defendant Keith Buch "never responded to [Plaintiff's] formal greetings and would look the other way during face to face meetings" and "made unprofessional comments about the quality of [Plaintiff's] work behind his back."  (Second Am. Compl. ¶ 23)  Sometime in or after April 2012, when Buch became manager, Buch's discriminatory behavior allegedly increased, as he "negatively commented on the education standard of Pennsylvania State University, where [Plaintiff] received one of his Master's Degrees, and on the quality of [Plaintiff's] work" even though Plaintiff "consistently received excellent performance appraisals . . . based on FAA recommendations" and "was endorsed several times in writing by FAA managers and headquarters."  (Id. ¶ 27)

4

Also during this time period, in or after April 2012, Defendant Donna Taylor allegedly began to "yell and scream" at Plaintiff during meetings and "used derogatory and humiliating comments," frequently pointing to Plaintiff as "'YOU PEOPLE,' referring to his being Indian and of the Hindu religion." (Second Am. Compl. ¶ 28)  Plaintiff responded on June 12, 2012, to Taylor's behavior by filing a formal complaint with Program Manager Nancy Davenport-Masi, but he was never informed that any action was taken on that complaint.  (Id.)

Plaintiff alleges that after he filed the complaint, Defendants Buch and Jay Repko retaliated against him by holding a meeting on January 18, 2013, from which Plaintiff was explicitly excluded.  (Second Am. Compl. ¶¶ 29-30)  Plaintiff was told by a co-worker that was present during that meeting that Buch and Repko criticized Plaintiff's work, despite never giving him negative feedback during his progress meetings, and made comments such as "WHERE DO THESE PEOPLE COME FROM," "HOW DO THEY WORK IN THEIR COUNTRY," and "THAT F___IN INDIAN DOESN'T KNOW HOW TO DO HIS JOB."  (Id.)

In February 2013, Plaintiff asserts that he "was the only employee whose job position category was changed from key-personnel to non-key personnel," the latter of which the government has no commitment to fund when a new contract is awarded.  (Second Am. Compl. ¶ 33)  When EIT bid on the

5

contract, Plaintiff's non-key position was, as expected, not funded by the FAA and on March 26, 2013, the FAA told Plaintiff that he would be terminated.  (Id. ¶ 35)  Under the same contract, Plaintiff alleges that the FAA upgraded at least two Caucasian Americans with fewer years of experience than Plaintiff and only Bachelor's degrees from non-key to key personnel and at the same time retained two more Caucasian American personnel, despite the categorization of their positions as non-key.  (Id. ¶ 33, 35, 37)

In his Complaint, Plaintiff alleges five counts: discrimination on the basis of (1) race, (2) religion, and (3) ethnicity; (4) retaliation; and (5) conspiracy to deprive Plaintiff of the rights and privileges accorded under law.  All five counts are brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §2000e-1, et seq., and Count Five is additionally brought directly under the Fifth Amendment[3] of the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon

---

[3] Plaintiff mentions in his Complaint that a *Bivens* claim may be brought under the Fourth, Fifth, or Eighth Amendments but provides facts and argument in support of his Fifth Amendment claim only (Second Am. Compl. ¶ 70; Pl. Opp. Br., Dkt. No. 33 at 15-16). Accordingly, the Court reads his Complaint as attempting to allege a claim under the Fifth Amendment only.

which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

When considering a Rule 12(b)(6) motion, the reviewing court must accept as true all allegations in the complaint and view them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  In reviewing the allegations, a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Instead, the complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.  *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Finally, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  A document

7

forms the basis of a claim when it is "integral to or explicitly relied upon in the complaint." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

### III. Discussion

Defendants move to dismiss Plaintiff's Complaint, including both his *Bivens* and Title VII claims.

Defendants move to dismiss Plaintiff's *Bivens* claim under the Fifth Amendment of the U.S. Constitution on the grounds that a) Title VII precludes the application of a *Bivens* remedy; b) special factors in this case counsel hesitation against implying a *Bivens* remedy, even if it were not barred by Title VII; c) sovereign immunity precludes a *Bivens* claim against all named defendants except those sued as individuals; d) qualified immunity precludes a *Bivens* claim against those defendants sued as individuals; e) *respondeat superior* liability does not apply, so individuals may be held responsible for their own behavior only and cannot be treated in the aggregate; f) the statute of limitations bars recovery for any claims earlier than two years prior to the filing of the complaint; and g) Plaintiff has failed to plead sufficient facts to support a claim of conspiracy to deprive him of the rights and privileges accorded under law.

Defendants move to dismiss Plaintiff's Title VII claims on the grounds that a) Title VII applies only to employers, and the

8

FAA was not Plaintiff's employer, since Plaintiff provided contract services only; b) Title VII allows suit against the head of an agency only, not against individual defendants; c) Plaintiff has failed to allege any facts to state a claim of discrimination on the basis of religion under Title VII; d) Plaintiff does not identify with sufficient specificity the hiring decisions to which he objects[4]; e) Plaintiff has failed to allege sufficient facts to state a hostile work environment claim because he alleges only "isolated workplace comments," not the severe or pervasive conduct required; and f) Plaintiff has failed to allege retaliation, because he fails to allege an adverse employment action and because he fails to show causation between any such action and his protected activity.

The Court considers each of these arguments in turn.

### A. Applicability of *Bivens* remedy

"Our Circuit has consistently held that 'Title VII provides federal employees with a remedy that precludes actions for constitutional or other statutory claims.' *Wilson v. Potter,* 159 Fed. App'x 415, 417 (3d Cir. 2005), *citing Owens v. United States,* 822 F.2d 408, 410 (3d Cir. 1987)." *Stevenson v. U.S.*

---

[4] Defendants also argue in their Motion that Plaintiff failed to formally apply to most of the positions he sought (Def. Motion 15-17), but as Defendants acknowledge in their reply brief (Def. Rep. Br. 5-6), such formal application is not required to allege a Title VII claim. *See EEOC v. Metal Service Co.,* 892 F.2d 341, 348-49 (3d Cir. 1990). The Court consequently considers this argument withdrawn.

*Post Office*, No. CIV. 04-597I (GEB), 2008 WL 108891, at *4
(D.N.J. Jan. 9, 2008)(dismissing plaintiff's *Bivens* and ADA
claims).[5]

    Plaintiff cites to *Davis v. Passman*, 442 U.S. 228 (1979),
wherein the Supreme Court recognized a *Bivens* remedy for a
Congressional employee claiming sex discrimination.  However,
the Court found a *Bivens* remedy in *Passman*, because Title VII
explicitly did not cover her particular position, and moreover,
she could not be reinstated, since the Congressman who
terminated her employment was no longer in office:  "For Davis,
as for Bivens, 'it is damages or nothing.'"  *Passman*, 442 U.S.
at 245 (*quoting Bivens*, 403 U.S. at 410).

    Such circumstances do not apply here.  Plaintiff can and
does seek equitable relief in the form of reinstatement to a
government position.  (Second Am. Compl. ¶ 20)  Moreover,
Plaintiff has not argued, even in the alternative, that Title
VII does not apply to his cause of action.  Plaintiff states
only that "[he] lacks a statutory cause of action against his
FAA supervisors under federal and state law"[6] and that Title VII

---

[5] *Stevenson* also cites "*Gissen v. Tackman*, 537 F.2d 784, 786 (3d Cir. 1976),
*quoting Brown v. General Serv. Admin.*, 425 U.S. 820, 828-29 (1976) (reviewing
the legislative history of Title VII and concluding that 'the congressional
intent in 1972 was to create an exclusive, pre-emptive administrative and
judicial scheme for the redress of federal employment discrimination.')." *Id.*
[6] Title VII, while allowing a suit against an agency to proceed against the
head of the agency, does not allow suit against individual employees.
*Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3d Cir.
1996).

does not provide the same damages.  (Pl. Opp. at 11)  While that may be true, Plaintiff cites no authority that he is entitled to a *Bivens* remedy against his defendant of choice, where a comprehensive, applicable statutory scheme explicitly limits claims like his to a certain type of defendant and a certain type of remedy.  An alternate conclusion would allow Plaintiff to bypass the comprehensive scheme laid out by Title VII.

Plaintiff recognizes this danger but states that he has, in fact, complied with Title VII's administrative requirements; such compliance was necessary because he is bringing a case against the FAA (by naming the Secretary of Transportation as Defendant).  This argument does not alter the analysis.  The fact that Plaintiff has chosen to comply with Title VII's requirements in his particular case does not change the fact that *Bivens* cannot be read to generally offer a plaintiff a cause of action against his supervisors independent of Title VII.  Given that Title VII exists, it provides the exclusive remedy for federal employment discrimination claims, and Defendants' motion to dismiss Plaintiff's *Bivens* claims will therefore be granted without reaching Defendants' additional objections based on special factors, immunity, *respondeat superior*, and statute of limitations grounds.

## B. Applicability of Title VII

Defendants move to dismiss Plaintiff's Title VII claims on the grounds that he is not an FAA employee, the head of the FAA is the only appropriate Defendant against whom he has brought suit, and he has failed to sufficiently plead discrimination. The Court considers each argument in turn.

### a. Employment Status

As a threshold issue, Defendants argue that Plaintiff has failed to allege a Title VII claim, because Title VII only protects employees, and Plaintiff was not an employee of the FAA but rather an independent contractor employed by third parties, EIT and Hi-Tec. (Def. Mot., Dkt. No. 32-1 at 23)

Indeed, Title VII states:

> It shall be unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. §2000e-2(a).

This portion of the statutory language appears to limit claims of discrimination under Title VII to employers, and the parties devote considerable briefing to the issue of whether or not the FAA is Plaintiff's employer. However, Title VII also provides certain protections to *applicants for employment*. For example, with regard to retaliation:

12

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. §2000e-3(a).

In addition, Title VII specifically prohibits unlawful discrimination toward applicants for employment by the federal government:

> All personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.

42 U.S.C. §2000e-16(a).

Finally, a failure-to-hire claim is distinguishable from other employment discrimination claims in that it necessarily applies in most circumstances to non-employees seeking employment positions rather than current employees. The relevant employment status inquiry in a failure-to-hire claim is the status of the position an applicant is seeking rather than the current relationship between the applicant and the would-be employer. *See Maune v. Bankers Life & Cas. Co.*, No. 4:10-CV-00074-BLW, 2012 WL 4758104, at *5 (D. Idaho Oct. 5, 2012) (finding that the Court's conclusion that plaintiff was an independent contractor, not an employee, did not automatically bar her failure-to-hire claims); *Thomas v. Texaco, Inc.*, 998 F.

13

Supp. 368, 370-71 (S.D.N.Y. 1998)(declining summary judgment due to factual dispute as to whether position for which defendant allegedly failed to hire plaintiff was an employment position protected by Title VII or a contractor position not so protected).

Here, Plaintiff alleges three types of discriminatory conduct (1) Defendants' failure to hire Plaintiff into a permanent position with the FAA during his 18 years of contract work; (2) Defendants' creation of a hostile work environment by yelling at him and commenting negatively on his job performance while referring to his race, religion, and ethnicity; and (3) Defendants' retaliation against Plaintiff for filing an employment discrimination complaint by negatively commenting on his job performance using discriminatory language and demoting his position from key to non-key, thereby setting him up for termination.

As discussed above, Plaintiff need not be an employee to bring a failure-to-hire claim.  Plaintiff has clearly stated that he applied – either formally or through informal verbal request – for a permanent position with the FAA that would constitute employment, not a contractor position like the one he already had.

However, Plaintiff's employment status during his contracting service must be resolved to determine whether

Plaintiff can invoke Title VII to bring his hostile work environment and retaliation claims.  Hostile work environment claims may be brought against employers only.  *See Fields v. Colgate Palmolive Co.*, No. CIV.A. 10-365 PGS, 2010 WL 5252537, at *4 (D.N.J. Dec. 15, 2010) (dismissing hostile work environment claim because defendant was not plaintiff's employer where hiring agency assigned plaintiff to work for defendant on a temporary basis).  Retaliation claims may be brought by applicants for employment, if the retaliatory conduct is related to the employment application; for any other retaliation conduct, however, plaintiff must be an employee.  *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214 (10th Cir. 2014)(denying retaliatory termination claim because plaintiff was not an employee; considering whether plaintiff's vendor application was an application for employment, because such an application would entitle her to Title VII retaliation protection, but concluding it was not since it sought only a contractual relationship).

"[T]he question of whether an individual is an employee turns on 'the hiring party's right to control the manner and means by which the product is accomplished.'"  *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 180 (3d Cir. 2009) (*quoting Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323 (1992)).  The factors to consider include:

15

> [T]he   skill   required;   the   source   of   the
> instrumentalities and tools; the location of the work;
> the duration of the relationship between the parties;
> whether  the  hiring  party  has  the  right  to  assign
> additional projects to the hired party; the extent of
> the hired party's discretion over when and how long to
> work; the method of payment; the hired party's role in
> hiring and paying assistants; whether the work is part
> of the regular business of the hiring party; whether the
> hiring party is in business; the provision of employee
> benefits; and the tax treatment of the hired party.

*Brown*, 581 F.3d at 180 (quoting *Darden*, 503 U.S. at 323-34)

The *Darden* Court added:  "Since the common-law test contains no shorthand formula or magic phrase that can be applied to find the answer, ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Darden*, 503 U.S. at 324 (internal quotation marks and citation omitted).  Citing *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997), Defendants therefore acknowledge that "the precise contours of an employment relationship can only be established by careful factual inquiry." (Def. Rep. Br. at 3).

Here, Plaintiff has pleaded numerous facts in support of the assertion that the FAA was his employer. (Second Am. Compl. ¶ 18, 20) His location of work was on-site with the FAA, and the FAA was the source of his instrumentalities. The duration of the relationship was nearly two decades.  FAA employees interviewed him to fill the contractor position with Hi-Tec, and he reported to FAA supervisors throughout

16

his career.   They exclusively assigned, supervised, and evaluated his work, provided him instruction and training, and approved his vacation time.   They also retained the right to hire, discipline and terminate him, ultimately assigning key and non-key positions at their exclusive discretion.

The Court finds these facts sufficient at this stage to forestall dismissal.   While Plaintiff has not provided facts regarding payment, tax treatment, and benefits, he has asserted enough facts to warrant discovery on these and other employment factors, given the fact-intensive nature of the inquiry. Defendants' motion to dismiss Plaintiff's Title VII on the grounds that he is not an employee will therefore be denied at this time, and the Court applies Title VII as the governing law.

**b. Appropriate Defendant**

Having determined that Title VII provides the applicable law, the Court notes that Title VII does not allow claims against individual defendants.   See *Dieffenbach v. Dep't of Revenue*, 490 F. App'x 433, 435 (3d Cir. 2012) (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir.1996)).   Instead, Title VII provides that an employee or applicant for employment, after exhausting administrative remedies, may bring suit against an executive agency by naming the head of that agency as defendant.   42 U.S.C. 2000e-16(c).

17

Here, Plaintiff has brought suit against over a dozen defendants: the Hon. Anthony R. Foxx, Secretary of Transportation; the FAA; the United States Department of Transportation; and individual defendants Shelley Yak, Howard Kimpton, Keith Buch, Jay Repko, Sharon Spector, Carleen Houston, Donna Taylor, Deborah Germak, and Paul Lawrence.  Applying Title VII, Plaintiff's claims against Secretary of Transportation Foxx remain, but Defendants' motion to dismiss all other Title VII claims against the FAA, the U.S. Department of Transportation, and individuals Yak, Kimpton, Buch, Repko, Spector, Houston, Taylor, German, and Lawrence will be granted.

### c. Sufficiency of Facts Pleaded

The Court now considers whether Plaintiff has pleaded adequate facts to otherwise support his failure-to-hire, retaliation, hostile work environment, and conspiracy claims against Defendant Foxx under Title VII.

### i. Failure to Hire (Counts One, Two, and Three)

"In order to demonstrate a prima facie case of discrimination under Title VII" for a failure-to-hire claim, "an individual must show that he or she: (1) is a member of a protected class; (2) was qualified for the position sought; (3) was subject to an adverse employment action despite being qualified; and, (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out

18

individuals with qualifications similar to plaintiff to fill the position." *Lula v. Network Appliance*, 255 F. App'x 610, 611-12 (3d Cir. 2007) (*quoting Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003)).

Plaintiff asserts in his Complaint that he is a member of a protected class, based on his race, ethnicity, and religion as a Hindu Indian American (Second Am. Compl. ¶ 14) and that he was qualified for the position he sought based on his education and experience, including two advanced degrees in Engineering Science and Environmental Engineering and his service through contractors to the FAA for nearly 18 years, with good reviews of his job performance (Id. ¶¶ 15, 27).  Defendants have not challenged him on these two points.

Plaintiff further alleges that he was subject to an adverse employment action under circumstances that raise an inference of discriminatory action, because 1) the FAA failed to hire him into a permanent position and instead sought out and hired Caucasian-American individuals into those positions, despite those individuals being less qualified than Plaintiff, and 2) even as the FAA demoted Plaintiff's position to a non-key category, resulting in his termination, it upgraded the positions of at least two Caucasian-American individuals into a key category classification, while simultaneously retaining two

Caucasian-American non-key employees, even after informing Plaintiff that all non-key positions would be terminated.

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin.  Plaintiff has asserted separate counts of discrimination on the basis of race, religion, and ethnicity.  The Court considers Plaintiff's failure to hire claim under each of these counts.

Plaintiff asserts discrimination on the basis of race and national origin by alleging that Defendants failed to hire him, an Indian American of Indian descent, instead hiring at least ten separate Caucasian Americans. Defendants have challenged Plaintiff's pleading on the grounds that his Complaint does not specify the particular hiring decision(s) to which he objects. However, the Complaint does name the ten specific Caucasian-American individuals Plaintiff claims were hired into the permanent positions he sought and for which he was qualified.[7]  Though Plaintiff does not specify the qualifications of each of these employees in comparison to his own, he does note that three of them (Nancy Davenport-Masi, Kimberly Lull, and Rebecca Anderson) had only completed their Bachelor's

---

[7] Plaintiff names Nancy Davenport-Masi, Kimberly Lull, Jeff Wawrrzeniak, Jill Sharra, Rebecca Anderson, John Floyd, Jonathan DeMario, Joe Lesnieski, Nick Germana, and Ms. [No first name provided] Trout.  (Second Am. Compl. ¶¶ 21-22, 25-26)

degrees when they were hired, that Lull and Anderson had been summer interns, and that Plaintiff had trained Lull himself.  (Id. ¶¶ 21, 25).

Plaintiff has also pleaded that as his position was downgraded, at least two Caucasian American employees, Jared D. Smith and Chris Corea, were upgraded from non-key to key positions (Id. ¶ 33), while two additional Caucasian American employees, Deborah Glavan and Domenica DeJesus, retained their jobs, despite their jobs being classified as non-key positions (Id. ¶ 37).[8]  More specificity is not required to establish a prima facie case of racial discrimination.  Defendants' motion to dismiss this claim will be denied.

Plaintiff's religious discrimination claim is less well-pleaded.  The Complaint does not specify the religion of any of the individuals that were promoted instead of Plaintiff, nor does it identify any comments or acts made by Defendants that refer to Plaintiff's status as a Hindu.  While the Complaint does indicate that Defendant Taylor referred to Plaintiff as "YOU PEOPLE," (Second Am. Compl. ¶ 28) no facts are provided to suggest that the phrase referred to Plaintiff's religion rather

---

[8] While Plaintiff has asserted these facts in the context of his retaliation claim only, and they do not themselves plead a failure-to-hire claim. However, the Court considers them as evidence of circumstances that raise an inference of discriminatory action.

than his race or his national origin. Because more specificity is required to establish a prima facie case of religious discrimination, the Court will grant Defendants' motion to dismiss this count.

In his third count, Plaintiff alleges discrimination on the basis of his ethnicity. Title VII does not prohibit discrimination on the basis of ethnicity, and Plaintiff does not define what he means by "ethnicity" separate and apart from his race and religion.[9] However, Plaintiff makes two references in his Complaint (¶ 42) to a claim of discrimination on the basis of national origin, a category covered by Title VII, and argues in his Opposition Brief that he has pleaded sufficient facts to state a claim of discrimination on the basis of national origin (Pl. Opp. Br., Dkt. No. 33 at 11).

"National origin refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came," and "neither United States birth nor citizenship necessarily precludes a national origin discrimination claim." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 766 (3d Cir. 2004), *as amended (Dec. 20, 2004)* (internal quotations and citations omitted).

---

[9] Ethnicity does not have a clear definition in the law, and there is variation in how the terms "race" and "ethnicity" are used. *See Rico v. Leftridge-Byrd*, 340 F.3d 178, 183 n. 6 (3d Cir. 2003).

While an Opposition Brief cannot salvage a claim that is not properly pleaded in the Complaint, the Court finds that the facts alleged in Plaintiff's Complaint, such as Defendants' alleged comments "WHERE DO THESE PEOPLE COME FROM" and "HOW DO THEY WORK IN THEIR COUNTRY" and "THAT F___IN INDIAN DOESN'T KNOW HOW TO DO HIS JOB", in reference to Plaintiff, an American citizen of Indian descent, are sufficient to state a claim of discrimination on the basis of national origin.  Defendants' motion to dismiss this count, the Court having interpreted "ethnicity" to mean "national origin," will be denied.

### ii. Hostile Work Environment (Counts One and Three)[10]

In order to establish a hostile work environment claim under Title VII, a plaintiff must show, by the totality of the circumstances, (1) that he or she suffered intentional discrimination because of race or national origin; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race or national origin in that position; and (5) the existence of respondeat superior liability.  *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996).  The totality of the

---

[10] Having dismissed Plaintiff's claims brought on the basis of religion (Count Two), the Court considers the remainder of Defendants' alleged conduct on the basis of race and national origin (Counts One and Three) alone.

circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (*quoting Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

The court in *Aman* reversed summary judgment to recognize a hostile environment claim where black employees were, among other things, referred to as "another one," "one of them," etc., "harassed on a daily basis" with "insults such as 'don't touch anything' and 'don't steal,'" falsely accused of "favoritism [and] incompetence," and "made to do menial jobs," while "white employees were not treated in a similar fashion."[11]   *Id.* at 1082 (internal quotations and citations omitted).

Plaintiff has pleaded three sets of facts that support his hostile work environment claim.   First, he states that Defendant Taylor "used derogatory and humiliating comments about [Plaintiff] in front of other contractors and government employees and yelled and screamed at [Plaintiff] during project meetings."   (Second Am. Compl. ¶ 28)   She "frequently referred to [Plaintiff] as 'YOU PEOPLE,' . . . behavior [that] was

---

[11] "In addition, several employees refused to deal with Aman even in matters where she was directly responsible for approving a customer's credit, and these employees were never reprimanded even though their actions were in direct violation of company policy."   *Aman*, 85 F.3d at 1082.

repeated multiple times in many meetings and was motivated by racism." (Id.) These actions led to Plaintiff experiencing elevated blood pressure and chest pains, and he filed a complaint with Program Manager Nancy Masi on June 12, 2012. (Id.)

Second, Plaintiff has pleaded the facts already outlined regarding the meeting on January 18, 2013, from which he was excluded. In that meeting, Defendants Buch and Repko allegedly made comments such as "WHERE DO THESE PEOPLE COME FROM" and "HOW DO THEY WORK IN THEIR COUNTRY" and "THAT F___IN INDIAN DOESN'T KNOW HOW TO DO HIS JOB" in reference to Plaintiff, along with comments that Plaintiff is "bullshitting about his work" and is a "waste of taxpayer money." (Second Am. Compl. ¶ 30) When these comments were relayed to him, the situation "forced Suri to leave work early with very high blood pressure and chest pains" for which he "sought help from his cardiologist" and "had to go to the emergency room."[12] (Id. ¶ 31–32).

---

[12] In addition, Plaintiff has pleaded facts that suggest that Defendant Buch was rude to him: "[Buch] never responded to [Plaintiff's] formal greetings and would look the other way during face to face meetings" and "made unprofessional comments about the quality of [Plaintiff's] work behind his back." (Second Am. Compl. ¶ 23) He also allegedly "negatively commented on the education standards of Pennsylvania State University, where [Plaintiff] received one of his Master's Degrees, and on the quality of [Plaintiff's] work" even though Plaintiff "consistently received excellent performance appraisals . . . based on FAA recommendations" and "was endorsed several times in writing by FAA managers and headquarters." (Id. ¶ 27) While this rudeness may be read in context to stem from racial animus, such an allegation does not rise above speculation as pleaded here. Plaintiff does not plead, for example, that Caucasian-American employees were treated differently.

Finally, Plaintiff has asserted that at least three "[o]ther Indian employees were the subjects of adverse employment action" along with Plaintiff, as one Rajinder Suri was demoted, one Bob Vasappa was fired, and Suri's brother [name not provided] was not hired when he was referred.  (Second Am. Compl. ¶ 40)

In combination with the FAA's alleged hiring of less qualified Caucasian-Americans in his place and the FAA's alleged failure to respond to his complaint of discrimination, these facts could support a finding that Plaintiff suffered intentional discrimination because of his race and national origin, which was pervasive and regular, and that the discrimination detrimentally affected Plaintiff, as it would have affected any reasonable person of the same race or national origin in his position.  The FAA can be subject to respondeat superior liability for the actions of its employees, and Defendants' motion to dismiss this claim will at this time be denied.

### iii. Retaliation (Count Four)

"To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: (1) [he] engaged in activity protected by Title VII; (2) the employer took an

26

adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (*citing Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir.1995)) (internal quotation marks removed).

To show an adverse employment action, "a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions materially adverse in that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore*, 461 F.3d at 341 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks removed)). "A plaintiff may establish the requisite causal connection by showing a close temporal proximity between the protected activity and the alleged retaliatory conduct, or by submitting 'circumstantial evidence ... that give[s] rise to an inference of causation.'" *Lacy v. Nat'l R.R. Passenger Corp.*, 254 F. App'x 934, 937 (3d Cir. 2007) (*quoting Marra v. Philadelphia Hous. Auth.,* 497 F.3d 286, 302 (3d Cir. 2007)).

Here, Plaintiff states that he engaged in a protected activity when he filed a formal complaint on June 12, 2012, with his Program Manager Nancy Davenport-Masi regarding Defendant Taylor's discrimination against him. (Second Am. Compl. ¶¶ 28)

27

After he filed this complaint, Plaintiff alleges that Defendants Buch and Repko retaliated against him by incorporating profanity related to his race and national origin into comments regarding his job performance on January 18, 2013, and that his job duties were reassigned (it is not clear from the Complaint by whom) to a non-key position in February 2013, setting him up for termination on March 29, 2013.  (Id. ¶29-34)

Defendants have not disputed that Plaintiff engaged in a protected activity or that Defendants made "complaints about his job performance" and reassigned Plaintiff's position to a non-key category that was ultimately terminated.  Defendants have also not disputed that the demotion of job duties, alleged to be a precursor to termination, qualify as adverse employment action.  However, Defendants argue that "complaints about . . . job performance" do not constitute adverse employment action, and that neither the complaints nor his termination were causally tied to Plaintiff's protected activity.

The facts as Plaintiff has alleged them in his Complaint amount to more than mere "complaints about his job performance." In a meeting from which he was shut out, Defendants Buch and Repko allegedly commented "WHERE DO THESE PEOPLE COME FROM" and "HOW DO THEY WORK IN THEIR COUNTRY" and "THAT F___IN INDIAN DOESN'T KNOW HOW TO DO HIS JOB" in reference to Plaintiff. (Second Am. Compl. ¶ 30)  They also commented that Plaintiff is

28

"bullshitting about his work" and is a "waste of taxpayer money."  Such comments may plausibly be viewed not as legitimate criticisms of Plaintiff's work but as part of an effort, motivated at least in part by racial bias, to denigrate Plaintiff's reputation as an employee and take steps towards his termination.  Taking these allegations to be true at this stage, the Court holds that a reasonable employee could find such actions materially adverse such that he would refrain from making or supporting a charge of discrimination, if he believed that the actions were taken in response to his protected activity.

However, Defendants also suggest that Plaintiff has failed to causally tie the comments allegedly made by Defendants Buch and Repko or the reassignment and termination of his position to the protected discrimination complaint that he filed.  Indeed, he has demonstrated neither temporal proximity nor circumstantial evidence that gives rise to an inference of causation.  *Lacy*, 254 F. App'x at 937.  More than seven months elapsed between the protected activity in June 2012 and the alleged retaliation in early 2013.  During those seven months, Plaintiff alleges that progress meetings were held after October 2012, and "[n]either Buch nor Repko made any negative comments about Suri's work at any of the progress meetings" and that Defendant Repko only stated "I like it, keep up the good work."

(Second Am. Compl. ¶ 29)  Because Plaintiff has not demonstrated the necessary causation, Defendants' motion to dismiss this count will be granted.

### iv. Conspiracy to Deprive Plaintiff of the Rights and Privileges Accorded Under Law (Count Five)

Plaintiff alleges this count under both *Bivens* and Title VII.  The facts Plaintiff alleges plead a cause of action under Title VII, as discussed above, and are governed by its comprehensive statutory scheme.  No additional cause of action on the same facts may be derived from another statute or judicially created separate and apart from the relief already provided in Title VII.

For example, 42 U.S.C. § 1985(3) provides a private cause of action against conspirators who deprive an individual "of having and exercising any right or privilege of a citizen of the United States," but the Supreme Court has expressly found that this statute cannot be used to enforce Title VII claims, because Title VII is its own comprehensive scheme that Congress intended to provide a remedy that is exclusive.  *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) ("Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3).")

30

In any case, Plaintiff fails to plead any specific facts to allege a conspiracy.  To constitute a conspiracy, there must be a "'meeting of the minds.'"  *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 205 (3d Cir. 2008)(*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970).)  Plaintiff alleges here that Defendants never hired him into a permanent position, demoted his contractor position to set him up for termination, and made discriminatory remarks to his face and behind his face to make his work environment hostile.  However, he does not allege that any one Defendant had a "meeting of the minds" with one or more of any other Defendant(s) to take these actions.  Defendants' motion to dismiss this count will be granted.

### IV. Conclusion

For the reasons stated above, the Court will grant Defendants' Motion to Dismiss regarding all Defendants with the exception of Secretary of Transportation Anthony R. Foxx.  With regard to Defendant Foxx, the Court grants Defendants' Motion to Dismiss Plaintiff's claims of discrimination on the basis of religion (Count Two), retaliation (Count Four), and conspiracy to deprive Plaintiff of rights and privileges accorded under law (Count Five).  The Court denies Defendants' Motion to Dismiss Plaintiff's claims of discrimination on the basis of race (Count One) and national origin (Count Three).  Plaintiff has stated a

prima facie case for a hostile work environment claim and a failure to hire claim that imposes upon Defendants an obligation to respond with a legitimate non-discriminatory reason for its actions.

An appropriate Order accompanies this Opinion.


Date:  December 19, 2014

                              s/ Joseph E. Irenas
                         **JOSEPH E. IRENAS, S.U.S.D.J.**